# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of: <br><br> ALFREDO MARTINEZ BARRAGAN, <br><br> Petitioner. | No. 84058-4-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

PENNELL, J.* — Alfredo Barragan filed a personal restraint petition (PRP), arguing his due process rights were violated, he received ineffective assistance of counsel at trial, and, in the alternative, he should be granted leave to conduct additional discovery. Mr. Barragan's claims for the relief are based on evidence that was disclosed by the State the day before the commencement of trial. Mr. Barragan has not demonstrated the withheld evidence prejudiced the outcome of his case or that there is good cause to believe additional discovery would be fruitful. We therefore deny the petition and the discovery motion.

## BACKGROUND

A jury convicted Alfredo Barragan of various felonies relating to sexual assaults against his daughter. The facts underlying Mr. Barragan's case are more fully set forth in the opinion addressing his direct appeal: *State v. Barragan*, No. 80365-4-I, slip op. at 2-11 (Wash. Ct. App. Nov. 30, 2020) (unpublished),

---

\* The Honorable Rebecca Pennell is a Court of Appeals, Division Three, judge sitting in Division One pursuant to CAR 21(a).

https://www.courts.wa.gov/opinions/pdf/803654.pdf. We recount here only those facts necessary to resolve Mr. Barragan's PRP.

Mr. Barragan and Georgina Rocha Herrera are the parents of G.[1], who was born in 1994. Mr. Barragan and Ms. Rocha lived together for most of G.'s childhood, but separated in 2012, when G. was a high school senior. After the separation, Mr. Barragan and Ms. Rocha continued regular contact and operated a business together.

In late 2015 or early 2016, Ms. Rocha discovered sexually explicit images on Mr. Barragan's Apple iPhone 6. The phone contained pictures and videos of a woman alone in a bathroom. The images included close-ups of the woman's genitalia. Ms. Rocha recognized the woman as G. based on her tattoo, clothing, and voice. Ms. Rocha recognized Mr. Barragan in one of the videos.

Ms. Rocha did not alter or delete the bathroom videos, but moved them out of the deleted folder to the main folder. At that time, Ms. Rocha did not talk to Mr. Barragan or G. about the videos. Ms. Rocha kept the iPhone 6 and Mr. Barragan never asked for it back.

In the summer of 2018, Ms. Rocha was in Mr. Barragan's apartment and discovered a hole on the wall separating Mr. Barragan's bedroom from the bathroom. The hole was hidden by a mirror. Ms. Rocha deduced that the images found on the iPhone 6 had been recorded through the hole from the vantage point of Mr. Barragan's bedroom. While she was in the apartment, Ms. Rocha found a

---

[1] To protect the privacy interests of the daughter, who was a minor during the majority of time relevant to Mr. Barragan's offense conduct, we refer to her only by a first name initial.

Samsung Galaxy phone. Ms. Rocha picked up the phone and a video started playing immediately. The video depicted G. having sexual intercourse with a man that Ms. Rocha later learned was G.'s boyfriend. The video appeared to be a recording of a video from another phone, which Ms. Rocha recognized as G.'s because of a distinct crack on the phone's screen.[2]

On further investigation of the phone, Ms. Rocha discovered a link to an iCloud account that contained sexually explicit videos of G. together with Mr. Barragan. Ms. Rocha was able to recognize G. and Mr. Barragan by their bodies, movement, clothing, and surroundings.[3] The videos were stored in an iCloud server. Ms. Rocha tried to save them, but did not have access to the iCloud account and did not know the password. Ms. Rocha then took a video of the images using her own phone.

Ms. Rocha then confronted Mr. Barragan about the images and told him to stay away from G. She then talked to G. and G. disclosed she had been sexually abused by Mr. Barragan. The two women contacted law enforcement and Ms. Rocha turned over the iPhone 6, the Samsung Galaxy, and Ms. Rocha's personal phone, an iPhone 7.

As the police investigation unfolded, G. recounted the details of Mr. Barragan's abuse. G. explained Mr. Barragan began molesting her when she was in the third grade. After her parents separated in 2012, G. moved into an apartment with Mr. Barragan, where the abuse continued. G. recognized the

---

[2] G. confirmed this information.
[3] G. later confirmed the images were of herself and Mr. Barragan.

3

images of the woman in the apartment bathroom as herself. However, she was not aware at the time that anyone was taking photos or video of her. G. moved out of Mr. Barragan's apartment in 2015, intending to stop the abuse. Nevertheless, she visited her father on Sundays to watch television. During these visits, G would fall asleep on the couch after being served alcohol by Mr. Barragan. Upon waking up on the couch, G. would notice that her pajama bottoms were undone. One time she was awakened by the sensation of her father on top of her, but later hoped that it was just a bad dream. G. subsequently recognized images taken from the Samsung Galaxy phone as depicting sexual acts perpetrated on her by Mr. Barragan while she was sleeping on his couch. G. did not remember Mr. Barragan filming her while she was on the couch. She also did not consent to any sexual activity.

Mr. Barragan was arrested on July 19, 2018. The State charged him with 14 felony offenses, including rape, child molestation, incest, and voyeurism. At the time of Mr. Barragan's arrest, law enforcement seized an iPhone 7. During a later search of Mr. Barragan's apartment, officers also seized an iPhone 4.

Law enforcement searched Mr. Barragan's phones and his iCloud storage account. During this process, officers uncovered intimate photos of G. that did not involve Mr. Barragan. G. explained that Mr. Barragan had access to her phone while she was living with him.

Prior to trial, Mr. Barragan filed two motions relevant to this PRP. First, Mr. Barragan sought to suppress some of the cell phone photographs and videos, arguing the State could not authenticate the materials or establish a chain

4

of custody. Mr. Barragan's argument was that multiple individuals, including Ms. Rocha and G., had access to the phones, the phone plan and the iCloud storage account. Mr. Barragan pointed out that there were videos in the iCloud account that likely did not come from Mr. Barragan's phone. The motion was denied.

Mr. Barragan's second motion was a motion to dismiss, filed the day before trial. In the motion, Mr. Barragan argued the State had failed to disclose exculpatory evidence—an e-mail chain between the State's lead detective and a representative of Apple Incorporated that was dated approximately seven months earlier. The e-mail chain stated the detective had found videos on the iCloud account that were dated after Mr. Barragan's arrest.

The court held a hearing on Mr. Barragan's motion on the morning of trial. During the hearing, the State disputed defense counsel's claim that the withheld e-mail chain constituted new information. The prosecuting attorney pointed out that the defense had previously been given discovery disclosing that the detective had communicated with Apple. And, as reflected in the suppression motion, the defense knew that there were images in the iCloud account that did not come from Mr. Barragan's phone. The prosecuting attorney also read out a text message conversation between the lead detective and G. that had been disclosed in discovery. During the exchange, the detective and G. discussed the fact that

photos from G.'s phone had "recently" been uploaded to Mr. Barragan's iCloud account. Report of Proceedings (May 28, 2019) at 12.[4]

The trial court denied Mr. Barragan's motion to dismiss. Trial proceeded as scheduled and the jury convicted Mr. Barragan on all counts. The conviction was affirmed on appeal and Mr. Barragan has now filed a timely PRP.

ANALYSIS

PRP relief is proper when a conviction has been obtained in violation of the United States Constitution, Washington State Constitution, or laws of the State of Washington. RAP 16.4(c)(2). To be entitled to PRP relief, a petitioner must establish by a preponderance of the evidence that (1) there was a constitutional error that resulted in actual and substantial prejudice, or (2) there was a nonconstitutional error involving a fundamental defect that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 154, 381 P.3d 1280 (2016).

Mr. Barragan's claim for PRP relief is based entirely on the State's late disclosure of the e-mail chain with Apple. According to Mr. Barragan, the withheld evidence contributed to two constitutional errors. First, he claims the late disclosure violated his right to due process. Second, he argues he was deprived of his right to effective assistance of counsel when his attorney did not request a continuance to investigate the significance of the e-mail chain.[5]

---

[4] G. commented in the text message exchange with the detective that she did not know the account had been linked to her phone.

[5] To the extent the State argued defense counsel had prior knowledge of the substance of the e-mail chain, Mr. Barragan argues his attorney was ineffective for not investigating the significance of third-party access to the iCloud account. This alternative argument does not change our analysis.

To establish a due process violation based on withheld evidence, the defendant must show (1) the undisclosed evidence was favorable, (2) that it was suppressed by the State (as opposed to a third party), and (3) and that prejudice ensued. *See Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). Establishing prejudice involves demonstrating a reasonable probability that the outcome would have been different. *In re Pers. Restraint of Mulamba*, 199 Wn.2d 488, 503, 507, 508 P.3d 645 (2022). Speculation is not enough. The mere possibility that undisclosed evidence might have led to other exculpatory information is insufficient to establish prejudice. *State v. Mak*, 105 Wn.2d 692, 704-05, 718 P.2d 407 (1986), *overruled in part on other grounds by State v. Hill*, 123 Wn.2d 641, 645, 870 P.2d 313 (1994).

A claim of ineffective assistance of counsel also requires a showing of prejudice, in addition to establishing deficient conduct. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The test for prejudice is essentially the same as it is for withheld evidence. *See id.* at 694. To obtain relief based on ineffective assistance of counsel, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*.

Mr. Barragan's due process and ineffective assistance claims fail because he has not shown prejudice. Rather than showing how the withheld e-mail chain impacted his convictions, Mr. Barragan hypothesizes that further investigation of the e-mail chain could have led to exculpatory evidence. This type of speculation is not sufficient to warrant relief.

The primary problem for Mr. Barragan's argument is that the undisclosed e-mail chain does nothing to undermine the contents of the State's video and photo evidence. The fact that others had access to the iCloud account is interesting. But it does not detract from the fact that the images in the account depicted Mr. Barragan sexually abusing his daughter.

Mr. Barragan suggests that timely disclosure of the e-mail chain would have allowed defense counsel an opportunity for an expert forensic analysis. But Mr. Barragan has not provided any concrete reason to believe that an expert review would have been fruitful. The mere possibility that an expert might have been able to provide favorable evidence is insufficient to establish prejudice. *See In re Pers. Restraint of Davis*, 188 Wn.2d 356, 376, 395 P.3d 998 (2017) (Without knowing "what the missing [expert] would have said" the evaluation of prejudice is "highly speculative.").

Mr. Barragan suggests that because G. and Ms. Rocha had access to his iCloud account, they could have manipulated the video and photo evidence in order to plant fabricated images of sexual abuse. According to Mr. Barragan, the iCloud access creates "significant questions concerning the tampering or alteration of video evidence." Reply to State's Response to PRP at 17. Mr. Barragan's characterization is inapt. While an allegation of fabricated evidence is a significant accusation, there is no significant evidence to suggest this is what happened. There are other reasonable explanations of why images from G.'s iPhone were found in stored in Mr. Barragan's iCloud account. For example, it is possible that

Mr. Barragan purposefully set G.'s iPhone to automatically upload images to his account as part of his long-standing scheme of sexual abuse.

Mr. Barragan also argues the undisclosed Apple e-mail chain would have bolstered his motion to suppress images taken from his phones and iCloud account based on lack of authentication and chain of custody problems. But G. testified that the images in question were of her and Mr. Barragan and were taken while G. was at Mr. Barragan's apartment. This was sufficient to meet the minimal burden of authentication. *State v. Sapp*, 182 Wn. App. 910, 914-16, 332 P.3d 1058 (2014). Furthermore, a properly authenticated photo or video is readily identifiable and therefore does not require the State to show chain of custody. *See State v. Roche*, 114 Wn. App. 424, 436, 59 P.3d 682 (2002) ("Evidence that is unique and readily identifiable may be identified by a witness who can state that the item is what it purports to be."); *Territory of Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985) (A "witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question.").

Finally, Mr. Barragan argues that if we reject his due process and ineffective assistance of counsel claims, we should grant leave for additional discovery on the iCloud storage and cell phone forensics issues. We are unpersuaded. The availability of postconviction discovery is not automatic. To obtain discovery, the moving party must show "a substantial likelihood the discovery will lead to evidence that would compel relief." *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 392, 972 P.2d 1250 (1999). This burden has not been met. As set forth above, the

idea that investigation of the iCloud account would yield exculpatory information is entirely speculative. The request for discovery is therefore denied.

CONCLUSION

The petition for relief and Mr. Barragan's motion for discovery are denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____

WE CONCUR:

_____          _____